# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JUN 2 9 2017

CLERK ... RT
... VIRGINIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No. 1:15-CR-293-TSE |
| ) | |
| WAYNE SHELBY SIMMONS, ) | Hon. T.S. Ellis, III |
| ) | |
| Defendant, Pro Se ) | |

## DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION UNDER TITLE 28, U.S.C., § 2255

COMES NOW the defendant, WAYNE SHELBY SIMMONS (the "Movant"), *Pro Se*, and herein submits a timely response to the government's *Supplemental Response* to the defendant's Title 28, U.S.C., § 2255 Motion. The subject *Supplemental Response* was submitted to this Court on June 16, 2017, and designated as Document 148.

1.      As a preliminary matter, the Movant again points out that the current § 2255 motion and subsequent *Response* were both filed *Pro Se* and as such,

> "...a document filed *pro se* is 'to be liberally construed,' Estelle *v.* Gamble, 429 U.S. [97], at 106, 97 S. Ct. 285 [1976], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' Ibid."

In that capacity, the Movant would like to clarify the statement(s) made in the initial §2255 Motion (Docket #131), as well as the subsequent *Response* (Docket # 146),

wherein it is stated that defense counsel should have filed preliminary "motions" in the District of Maryland to suppress the admissibility of the two (2) shotguns. Although not specifically stated therein, these "motions" in the District of Maryland would have obviously followed a formal charging document, such as an Indictment or Information, pursuant to Rules 12/41 of the Federal Rules of Criminal Procedure (FRCP). Although my intent should have been obvious, the Movant wanted to clarify that distinction.

2.      Additionally, the Movant's original § 2255 motion, and subsequent *Response*, cited three (3) separate failings by defense counsel:

> **1.** Defense counsel failed to question the admissibility of two vintage shotguns found in the Movant's Annapolis, Maryland residence and subsequently used in an Eastern District of Virginia ("EDVA") *Information*, dated October 15, 2015, charging the Movant with possession of a firearm in violation of Title 18, U.S.C., § 922(g)(1); **2.** Even though their whereabouts were easily obtainable, defense counsel neglected to locate, interview and then subpoena exculpatory witnesses for Movant's sentencing; and **3.** Defense counsel failed to turn over to the sentencing court consequential and readily available mitigating evidentiary exhibits that defense counsel had repeatedly asserted to the court existed and would be turned over prior to sentencing. However, contrary to these assertions and proffers to the sentencing court, defense counsel repeatedly failed to provide the court with these mitigating documents/exhibits as promised.

Items **2** and **3** have been previously addressed in both the initial § 2255 motion as well as the subsequent *Response* submitted by the Movant. The remaining issue - and arguably most consequential - is the admissibility of the firearms in the Movant's eventual plea in the Eastern District of Virginia ("EDVA").

SYNOPSIS

3.     On July 15, 2016, the Movant entered a plea of guilty in the instant matter in the EDVA. Part of that plea agreement contained an *Information* charging the Movant with possession of two (2) vintage shotguns seized at his residence in the District of Maryland. The questionable means by which the shotguns were "discovered" by the FBI and then transported to the Eastern District of Virginia was explained in some detail to the Movant's initial Federal Public Defender as well as the CJA appointed defense counsel, William Cummings, Esq. (hereinafter, "defense counsel").

4.     Movant has alleged that during critical plea negotiations in the EDVA, defense counsel never explored (in fact, ignored) the questionable 4th and 5th Amendment arrest/search & seizure tactics implemented by the FBI at the Movant's Annapolis residence, which led to the "discovery" of the weapons.[1] Additionally, defense counsel never properly explained to the Movant that, in lieu of pleading guilty to the Information in the EDVA, there was a legal option that would have forced the government to formally charge the Movant for the possession of the shotguns in the District of Maryland. As the Movant's defense attorney, he should have fully explained that being charged in that jurisdiction (Maryland) would have afforded the Movant an opportunity to file motions to suppress the admissibility of the two (2) vintage shotguns – assuming of course the District of Maryland would have even agreed to file formal charges under these questionable circumstances. In any event, the weapons would not have been part of the EDVA plea agreement.

---

[1] Contrary to the government's and defense attorney's near insulting comments to the Movant concerning federal court procedures and venue, it should have been obvious to them that the Movant was suggesting that the firearms charges in EDVA should have been voided and moved to the District of Maryland with a different CJA attorney appointed by that court, if necessary, to handle a suppression motion.

5.    Ultimately, defense counsel neither pursued this logical defense option in the District of Maryland nor did he present the option to the Movant for his consideration. Instead, defense counsel ignored his legal obligation by convincing the Movant to plea guilty to the instant matter including the *Information* with the weapons counts contained therein. This ill-advised guilty plea resulted in a sentence more than five (5) times higher for the Movant in the EDVA.[2]

<u>RESPONSE</u>

6.    The government's most recent response (Docket # 148) restates their previous version of the facts concerning the admissibility of the shotguns in the EDVA. However, the government's not so subtle attempts to misdirect this court's attention away from the Movant's legal option to question the admissibility of the firearms in the District of Maryland is designed to either intentionally ignore the facts set forth in the Movant's two previous submissions or it simply fails to grasp the facts set forth therein – the Movant suspects the former. Moreover, the EDVA spends an inordinate amount of time stating the obvious about the Movant's guilty plea in this matter. However, the government conspicuously omits the fact that the Movant's "plea" was obviously entered into *"unknowingly and unintelligently"* thereby rendering the validity of the EDVA guilty plea questionable – at best.

7.    Pursuant to this Court's Order of June 5, 2017, defense counsel prepared a secondary response to the Movant's allegations and again did so in a "Memorandum" format dated **June 6, 2017**. A copy of that <u>unsigned</u> document was sent to the Movant by the government, via USPS, on **June 7, 2017** and was received by the Movant on/about

---

[2]  See ¶ 10

**June 12, 2017.** However, on **June 16, 2017**, the government filed their formal Response with this court and did so with the now <u>signed</u> Memorandum from defense counsel attached thereto. That version of the Memorandum from defense counsel is now dated **June 8, 2017** and the document has been substantially altered from the original version sent to the Movant on June 7, 2017. Other than the fact that the Movant is functioning as a *Pro Se* litigant and the government's intention was to confuse and/or mislead the Movant with the submission of duplicitous documents, the Movant cannot reconcile why the government would send one unsigned version to the Movant on June 7, 2017 and then have defense counsel significantly edit/alter that version, sign it on June 8, 2017 and then have the government formally submit that altered version to this court on June 16, 2017. Notably, one of the deleted paragraphs from the original version of defense counsel's memorandum stated in pertinent part:

> *"By the time counsel met the defendant, the defendant had already been advised by the Federal Defender concerning the matter of the seizure guns [sic] from his house when he was arrested. It may be helpful for the government to ask the Federal Defender about the Federal Defender's discussions, if any, with the defendant about filing a motion to suppress as a result of the seizure."*

Aside from the fact that defense counsel clearly appears to be "coaching" the government in how they should proceed in this matter, defense counsel is himself confirming that he apparently never personally discussed the firearms issue with the Movant electing instead to rely on what the Movant may or may not have said to the Federal Public Defender in the early stages of this matter. Additionally, in doing so, defense counsel is clearly corroborating the Movant's assertions that defense counsel never personally investigated, nor did he even research, the firearm issue in the District of Maryland. Little wonder why

the government would want to omit this paragraph from the original version prepared by defense counsel.

8. In any event, this most recent example of seemingly blatant collusion between the government and defense counsel in the preparation of what now appears to be both of defense counsel's two (2) memoranda should render anything defense counsel may now say as highly dubious.

9. Notwithstanding defense counsel's self-serving (and now apparently government influenced) assertions set forth in his two (2) previous memoranda, the Movant has stated on multiple occasions (and the record will now support) that defense counsel repeatedly and egregiously failed to explore, or even question, the legality of the tactics implemented by the FBI that led to the discovery and seizure of the weapons in the District of Maryland. The defense counsel then failed to properly explain to the Movant the legal situation ("landscape") and/or his legal options concerning the Maryland seizure of the shotguns. Such an expected and mandated explanation would have ensured that the Movant was properly informed and, therefore, able to render a *"knowing and intelligent"* decision concerning a possible plea of any type. Furthermore, contrary to the government's repeated assertions that the Movant entered a plea of guilty in the EDVA, and allocuted to the facts contained therein, it should have been both obvious, as it is relevant, that the Movant allocuted to the facts as he knew them at the time – incomplete and skewed facts that were spoon-fed to the Movant by an ill-prepared and ineffective defense counsel. Indeed, the government knows, or should have known, that a majority of these new facts only came to light **post**-plea and based on these new facts, the Movant would have logically and unequivocally rejected the plea to the EDVA Information for

possession of the firearms and demanded that the government formally charge the Movant in the District of Maryland. In that venue, the Movant would have been afforded an opportunity to challenge the admissibility of the firearms based on the questionable warrantless tactics utilized by the FBI in locating and seizing the firearms while, at the same time, preserving the Movant's appellate rights in the matter. Instead, defense counsel allowed the EDVA to use the questionably seized shotguns as an improper and unethical "bargaining chip" to compel the Movant to enter into an ill-advised plea agreement to the firearms – ultimately, albeit unknowingly, increasing his sentencing guideline range by more than five (5) times.

10.     Specifically, the Movant's final Sentencing Guideline Range was **19** - the weapons brought an initial Sentencing Guideline Range of **14** plus two (2) levels, for a sentencing enhancement pursuant to 3C1.1; therefore a base Guideline Range of **16**. Accordingly, should this court now reconsider the admissibility of the weapons as a base offense, the Movant would have actually faced a final Sentencing Guideline Range of **3** (0-6 Months) – certainly, not an event worthy of the multiple press releases/conferences orchestrated by the EDVA in this matter.

11.     Pursuant to the uncontested facts set forth herein, the Movant respectfully suggests that it was no accident, nor innocent oversight, that the FBI questionably seized the firearms in the District of Maryland and then surreptitiously transported them to the Eastern District of Virginia thereby intentionally by-passing the judicial scrutiny of the District of Maryland. The EDVA then has the temerity to repeatedly ridicule the Movant's *Pro Se* questions concerning the admissibility of the shotguns in either the

District of Maryland or the EDVA - indeed, even referring to the Movant's questions as "nonsensical."

12.     Contrary to his unsupported, and now questionable, assertions, defense counsel failed to properly investigate and then conduct requisite legal research into the questionable seizure of the shotguns at the Movant's residence in the District of Maryland.[3] Resultantly, defense counsel improperly convinced the Movant to plead guilty to the firearms charges in the EDVA instead of forcing the government to file charges in the District of Maryland thereby allowing the Movant an opportunity to file the requisite motions to suppress their admissibility and preserve his appeal rights in the matter.

ARGUMENT

13.     The Sixth Amendment right to effective assistance of counsel extends to "all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U. S. 778, 786, established that Strickland's two-part test governs ineffective assistance claims in the plea bargain context. There, the defendant had alleged that his counsel had given him inadequate advice about his plea, but the defendant failed to show that he would have proceeded to trial had he received the proper advice.

14.     Such is not the case here - in-point-of-fact, had the Movant been properly informed, under the existing circumstances, the Movant certainly would have agreed to being charged and then, if necessary, going to trial in the District of Maryland concerning the two (2) vintage shotguns – assuming of course that the District of Maryland would

---

[3] Under these specific circumstances, defense counsel should have told the EDVA that the Movant would not be pleading to the weapons in the EDVA and suggest they seek a charging document in the District of Maryland. Defense counsel could have then appeared there *Pro Hac Vice* or simply had alternate CJA counsel assigned if Maryland even decided to charge the Movant.

8

have even charged the Movant for the weapons seized under these questionable circumstances. The Movant again cites Padilla v. Kentucky to argue that the Sixth Amendment guarantees effective assistance of counsel during plea bargain negotiations regardless of whether a defendant accepts or rejects a plea offer. Instead, the deficiency may cause prejudice if it affects "the outcome of the plea process."

15.     Arguably, Lafler v. Cooper, 132 S. Ct. 1376 (2012) and Missouri v. Frye, 132 S. Ct. 1399 (2012) helped further clarify the scope of the Sixth Amendment right to effective assistance of counsel during plea bargaining. However, the right to effective assistance of counsel at the plea bargaining stage was already well established before these two companion decisions. See Padilla v. Kentucky, 130 S.Ct 1473 (2010) and Hill v. Lockhart, 474 U.S. 52 (1985). Both of those decisions, as in the instant matter currently before this court, involved the issue of whether ineffective assistance of counsel caused the defendants to *accept* the offer of a guilty plea.

> "Frye's 'open' guilty plea did not vitiate the harm from counsel's deficient performance. A guilty plea does not waive a claim that ineffective assistance of counsel rendered the plea **unknowing and unintelligent**. Tollett v. Henderson, 411 U.S. 258, 267 (1973). A **valid plea** must be a **"voluntary and intelligent** choice among the alternative courses of action open to the defendant." North Carolina v. Alford , 400 U.S. 25, 31 (1970); Hill , 474 U.S. at 56."
>
> [Bold and emphasis added by the Movant]

Accordingly, the Movant would respectfully suggest that had he been effectively represented by defense counsel, the Movant would have *knowingly and intelligently* rejected the guilty plea to the Information in the EDVA and instead availed himself of the *"alternative courses of action"* in the District of Maryland.

9

17.    Based on the foregoing, the Movant would aver to this Honorable Court that, under these very specific circumstances, the Movant received Ineffective Assistance of Counsel concerning his ill-advised guilty plea to possession of the weapons in the EDVA.

## RELIEF SOUGHT

16.    The Movant would ask that this court accept as factual that defense counsel failed to properly and effectively represent the Movant in the instant matter. In doing so, defense counsel improperly convinced the Movant to plead guilty to the weapons charge in the EDVA, which had an extremely negative impact on the Movant's sentence in this matter. Whereas, had defense counsel acted in an effective and professional manner, properly considering the aforementioned constitutional infirmities, Movant could have collaterally attacked the admissibility of the 2-shotguns in the District of Maryland; presupposing that District even agreed to charge the Movant.

17.    Title 28, U.S.C. § 2255 (a), states in pertinent part:

(a)   A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, *or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.*

18.    Accordingly, the Movant respectfully requests that this court consider the totality of the facts set forth herein and then *correct* the Movant's original sentence of 33-months. Specifically, reconsider the Movant's sentence without considering the weapons as part of the original guilty plea.

19.    The Movant reported to FCI – Schuylkill in September 2016 and has currently served approximately 10-months (or 1/3) of the 33-month sentence. As previously stated herein, should the weapons offense be withdrawn from the original Plea Agreement, the Movant had a Sentencing Guideline Range of 3 (0-6 months). Should the court consider statutory "Good Time," the Movant has nearly served what would be considered a sentence of a year and a day (366 days).

THEREFORE, the Movant respectfully requests that this Honorable Court consider all the facts and circumstances contained in the Movant's three (3) submissions to this court, consider the collusive conduct of the defense attorney and the government and then **correct** the Movant's original sentence to **one year and a day** or other such reduced sentence deemed appropriate by the court. Pursuant to Title 28, U.S.C., § 2255, such a sentence **correction** is within the authority of the sentencing court and continues to serve the spirit of Title 18 U.S.C. § 3582(a). Lastly, should the court conclude that the instant pleading has merit and grants the sentence reduction, the Movant would ask that, under these specific circumstances, the court bar the government from attempting to re-litigate the firearm charge against the Movant in the EDVA or the District of Maryland.

Respectfully submitted,

/s/ *Wayne Shelby Simmons*
Wayne Shelby Simmons
Reg. No. 21594-037
FCI – Schuylkill
P.O. Box 670
Minersville, PA 17954

DATE: June 27, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused service to be made of Movant's Supplemental Motion Objecting to the Presentence Report by filing on the following by United Parcel Service (UPS):

**Clerk of the Court**
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314

**James L. Trump, Esq.**
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

Respectfully submitted,

/s/ *Wayne Shelby Simmons*
Wayne Shelby Simmons
Reg. No. 21594-037
FCI – Schuylkill
P.O. Box 670
Minersville, PA 17954

DATE:  June 27, 2017